# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Kimberly Watso, individually and on
behalf of C.H. and C.P., her minor
children, and Kaleen Dietrich,

               Plaintiffs,

v.

Emily Piper in her official capacity as
Commissioner of the Department of
Human Services; Scott County; Tribal
Court of the Shakopee Mdewakanton
Sioux (Dakota) Community; Judge John
E. Jacobson, in his official capacity;
Tribal Court of the Red Lake Band of
Chippewa Indians; Judge Mary
Ringhand, in her official capacity; Isaac
Hall; and Donald Perkins,

               Defendants.

Case No. 0:17-cv-00562-ADM-KMM

**REPORT AND
RECOMMENDATION**

---

       In this Report and Recommendation, the Court addresses the following
dispositive motions, which were referred to the undersigned by the District Court:

       (1) The Tribal Court of the Shakopee Mdewkanton Sioux (Dakota) Community
          and Judge John E. Jacobson's Motion to Dismiss, ECF No. 12;
       (2) Emily Piper's Motion to Dismiss Plaintiffs' Complaint, ECF No. 29;
       (3) Defendant Scott County's Motion to Dismiss, ECF No. 46;
       (4) The Tribal Court of the Red Lake Band of Chippewa Indians and Judge
          Mary Ringhand's Motion to Dismiss, ECF No. 53.[1]

---

[1]      The plaintiffs agreed to voluntarily dismiss their claims against Isaac Hall and
Donald Perkins. ECF Nos. 97 & 98. Accordingly, Mr. Hall's motion to dismiss, ECF
                                               *(footnote continued on following page)*

The Court held a hearing on these motions on May 25, 2017. For the reasons that follow, the Court recommends that each of the motions be granted and this matter be dismissed.

## FACTUAL ALLEGATIONS[2]

This case involves child welfare proceedings in the Tribal Court of the Shakopee Mdewakanton Sioux (Dakota) Community (the "SMSC Court") and the Tribal Court of the Red Lake Band of Chippewa Indians (the "Red Lake Band Court"). Kimberly Watso is the biological mother of two minor children, C.H. and C.P. Compl. ¶ 1, ECF No. 1. Ms. Watso is a non-Indian, *id.*; C.H. is a member of the Shakopee Mdewakanton (Dakota) Community ("SMSC"), *id.* ¶¶ 3, 30; and C.P. is a member of the Red Lake Band of Chippewa Indians ("Red Lake Band"), *id.* ¶¶ 2, 27. Isaac Hall is C.H.'s father, *id.* ¶ 15; and Donald Perkins is the father of C.P, *id.* ¶ 14.

On January 22, 2015, a representative of the SMSC Family and Children Services Department filed an emergency ex parte petition in the SMSC Court seeking a determination that C.P. and C.H were children in need of assistance, and asking to transfer custody to the SMSC's Child Welfare Office.[3] *See Watso v. Jacobson, et al.*

---

*(footnote continued from previous page)*

No. 36, is moot. The plaintiffs also recently filed a motion for partial summary judgment. ECF No. 103. Because the Court concludes that the complaint fails to state a claim, this motion for partial summary judgment is also moot.

[2]    The bulk of the Complaint is comprised of legal conclusions and assertions about the language, meaning, and applicability of federal statutory provisions. Here, the Court only sets forth the relatively straightforward factual averments within the pleading.

[3]    The Complaint implies that the events relevant to this case began nearly a month later and does not acknowledge these pre-existing child welfare proceedings in the SMSC Court. However, at the hearing on the motions to dismiss, plaintiffs' counsel acknowledged that SMSC child welfare proceedings predated the event the plaintiffs chose as the starting point for their pleading in this case.

("*Watso I*"), No. 16-cv-983 (PJS/HB), Doc. No. 1 ¶ 52 (D. Minn. May 31, 2016) (Petition); *id.* at Doc. No. 14 (Exhibit A, Emergency Ex Parte Pet. for Children in Need of Assistance). Three days later, the SMSC Court determined that the matter should not be heard *ex parte* and found that the parents should be present. SMSC's Ex. A, ECF No. 17.

On February 24, 2015, Ms. Watso and Mr. Hall brought C.H. to a medical clinic for an examination of C.H.'s head. Compl. ¶ 18. As a result of that visit, a report of possible child abuse was made against Ms. Watso and Mr. Hall. *Id.* ¶ 19. A detective with the Shakopee Police Department issued a Notice of 72-Hour Police Health and Safety Hold notifying the parents that C.H. and C.P. would be held at Children's Hospital.[4] Compl., Ex. 3 ("72-Hour Hold"). No child welfare proceedings were initiated in the state court in Scott County. *Id.* ¶ 20.

The Complaint states that "on February 25, 2015, Scott County referred and transferred the C.H. and C.P. matters to SMSC's social service agency for tribal court proceedings." Compl. ¶ 129; *see also id.* ¶¶ 20, 131. However, an exhibit attached to the Complaint indicates that on February 25th, the SMSC Court received an Emergency Ex Parte Motion to Transfer Legal and Physical Custody of C.H. and C.P. as part of the pre-existing child welfare proceedings described above. Compl., Ex. 4. Though the motion to remove the children from their parents' custody was originally filed ex parte, Ms. Watso was notified of the motion at some point and filed an objection to the SMSC Court's exercise of jurisdiction in the child welfare proceeding. *Id.* ¶¶ 130-36. The SMSC Court rejected Ms. Watso's arguments and issued orders related to the custody and care of the children. *See id.* ¶ 137; *id.*, Ex. 4. The SMSC Court also rejected Ms. Watso's argument that it lacked subject matter jurisdiction because a Minnesota state court did not first determine that jurisdiction should be transferred to a tribal court. *Id.*, Ex. 5 at 4. Eventually, on January 17, 2017, the SMSC Court granted

---

[4]    Although the Complaint alleges that "Scott County placed a 72 hour administrative hold on C.P. and C.H.," Compl. ¶ 20, Exhibit 3 to the Complaint indicates that the notice was generated by the Shakopee Police Department.

the Red Lake Band's motion to dismiss the tribal court proceedings concerning C.P., who is a Red Lake Band member, "allowing the Red Lake Nation to take jurisdiction over C.P." *Id.* ¶¶ 21, 142.

The present lawsuit is not Ms. Watso's first related to these matters. A previous federal case, styled as a habeas petition, was voluntarily dismissed as moot on February 10, 2017, *id.* ¶ 146, and this case was filed on February 23, 2017. In this case, just as she previously argued to the SMSC Court, Ms. Watso essentially asserts that the tribal child welfare proceedings that have taken place in the SMSC Court and the Red Lake Band Court are invalid because the Scott County District Court did not first decide that it was proper for the tribal courts to exercise jurisdiction.

At the time this case was filed, Kaleen Dietrich, who is the maternal grandmother of C.H. and C.P., was caring for C.P. pursuant to an order of the Red Lake Band Court. Compl. ¶ 34. C.H. was under the care of Allene Ross[5] pursuant to an order of the SMSC Court. *Id.* ¶ 36. The Complaint ambiguously alleges that "C.H. and C.P. do not reside [as of February 23, 2017] and are not domiciled within the boundaries of Red Lake Nation of Chippewa Indians," *id.* ¶ 25, but there are no allegations setting forth where the children lived when the child welfare proceedings commenced.

## CLAIMS FOR RELIEF

Ms. Watso alleges that the "transfer" of the child welfare proceedings was contrary to the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1914, her federal constitutional rights, and other provisions of federal law. She "seeks dismissal of both tribal court proceedings without prejudice and remand to [MNDHS] and Scott County for Scott County and [MNDHS]" so that any child-welfare decisions concerning C.H. and C.P. are made by a State court rather than a tribal court. *See*

---

[5]    The Complaint does not identify Allene Ross' relationship to the other parties or either minor child.

4

Compl. ¶ 147. Although the Complaint originally included four separate counts, each containing multiple claims against various defendants, the issues have been considerably narrowed by stipulation of the parties. ECF No. 71.[6]

Currently before the Court are the following more limited claims. Count I of the Complaint is most clearly stated as a claim against the SMSC Court and the Red Lake Band Court. It is possible that the plaintiffs also intend to assert a claim in Count I against Judge Jacobson and Judge Ringhand for their actions in the tribal court proceedings. The plaintiffs seek a declaration invalidating the tribal court child-welfare proceedings pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1914. They also request an injunction requiring the SMSC Court and the Red Lake Band Court to dismiss their respective child custody proceedings for lack of jurisdiction. Compl. ¶¶ 148-57. Finally, as part of Count I, Ms. Watso asks the Court to enjoin Scott County to "re-initiate its administrative proceedings regarding C.H. and C.P. and to comply with this Court's decision, ICWA and MIFPA." *Id.* ¶ 157.

Count III of the Complaint is asserted against the DHS Commissioner and Scott County. In Count III, pursuant to 42 U.S.C. § 1983, the plaintiffs allege that the DHS Commissioner and Scott County violated their rights under the United States Constitution (due process and equal protection) and the Indian Child Welfare Act. *Id.* ¶¶ 168-77.

---

[6]    Pursuant to a stipulation, the District Court dismissed the plaintiffs' civil rights claims under 42 U.S.C. § 1983 in Count IV of the Complaint against SMSC, the SMSC Court, Judge John E. Jacobson (official capacity), the Red Lake Band, the Red Lake Band Court, and Judge Mary Ringhand (official capacity). Order, ECF No. 73. The District Court also dismissed habeas corpus claims under the Indian Civil Rights Act, 25 U.S.C. § 1303, in Count II of the Complaint against the SMSC Court, Judge Jacobson (official capacity), the Red Lake Band Court, and Judge Ringhand (official capacity). *Id.* Finally, the District Court dismissed "all other claims . . . against [SMSC] and against defendant [Red Lake] . . . so these defendants are no longer parties to the case." *Id.* The Court's dismissal order, however, noted that the dismissal of SMSC and the Red Lake Band did not affect Count I of the Complaint as to any other defendant. *Id.*

As explained below, at its most fundamental, all of the claims against all of the remaining defendants rely upon a particular statutory analysis proffered by the plaintiffs. However, because that analysis is incorrect, it undermines the plaintiffs' entire theory of the case.

## DISCUSSION

## I.    Count I: State and Tribal Jurisdiction

Although the precise contours of the plaintiffs' primary argument are not spelled out clearly in the Complaint or in their response to the motions to dismiss, at the hearing plaintiffs' counsel articulated an interpretation of several federal statutes that forms the lynchpin of the assertion that the tribal court proceedings must be invalidated. The plaintiffs' argument relies on an interpretation of the intersection of the Indian Child Welfare Act ("ICWA") and a specific provision of what is commonly referred to as Public Law 280. However, careful examination of both statutes and the case law interpreting them reveals the errors in the plaintiffs' reasoning.

### A.    The Relevant Statutes

In order to understand the flaws in the plaintiffs' legal position, the Court must first examine the provisions and purposes of the two statutes upon which they rely, and of the tribal code which they disregard.

### Public Law 280

In 1953, Congress enacted Public Law 83-280, commonly known as PL 280, which delegated jurisdiction to a handful of enumerated states over many criminal and civil matters that arose on the "Indian country" within those states.

> Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the

same force and effect within such Indian country as they have elsewhere within the State[.]

28 U.S.C. § 1360(a). Most of the reservations within the state of Minnesota, including SMSC, are covered by PL 280, but the Red Lake Band is not. Importantly, although PL 280 gave jurisdiction over some matters to states, it left intact the inherent tribal jurisdiction over many of these matters that preceded the statute.[7] *Cohen's Handbook of Federal Inidan Law* § 6.04[3][c], at 555 (Nell Jessup Newton ed., 2012) (hereinafter "*Cohen's Handbook*") ("The nearly unanimous view among tribal courts, state courts, lower federal courts, state attorneys general, the Solicitor's Office for the Department of the interior, and legal scholars is that Public Law 280 left the inherent civil and criminal jurisdiction of Indian nations untouched."); *see also Walker v. Rushing*, 898 F.2d 672, 675 (8th Cir. 1990) ("Nothing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority.") (citing *Cohen's Handbook of Federal Indian Law* at 344 (1982)). PL 280 thus gave rise to state authority over some matters in Indian Country, but did not invalidate tribal sovereignty or tribal court jurisdiction over most of these arenas.

---

[7]      It is an open question whether the civil matters over which states were given jurisdiction by PL 280 even include child welfare and child custody proceedings, such as those at issue in the present case. PL 280 has been interpreted to mean that regulatory matters are not included in its grant of authority to states. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 212 (1987) (holding that California could not enforce its regulatory prohibitions on certain games of bingo within an Indian reservation because the law was not criminal in nature). But it is far less clear whether child custody and welfare proceedings are more akin to the civil matters over which the states have power or regulatory matters, over which they do not. *See, e.g. Doe v. Mann*, 415 F.3d 1038, 1058-61 (9th Cir. 2005). The Court need not resolve this issue because it concludes that, even if the State could have exercised jurisdiction in this matter, the tribes validly did so.

### Indian Child Welfare Act

The Indian Child Welfare Act was adopted in 1978 in response to the extremely high numbers of Indian children removed from their families and communities through state court child welfare proceedings.[8] ICWA is codified at 25 U.S.C. §§ 1901-1963. In its broadest terms, ICWA "constructs a statutory scheme to prevent states from improperly removing Indian children from their parents, extended families and tribes . . . . It functions to expand and enhance *tribal* power over decision-making regarding [Indian] families." *Cohen's Handbook*, § 11.01[1], at 830. Although ICWA is a lengthy and complex statute, only a few provisions are relevant here.

First, section 1911 contains language addressing tribal jurisdiction over "Indian child custody proceeding[s]." One provision of this section addresses the "exclusive jurisdiction" of Indian tribes:

> An Indian tribe shall have jurisdiction *exclusive* as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, *except where such jurisdiction is otherwise vested in the State by existing Federal law.* Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a) (emphasis added). Another paragraph in the same section goes on to advise that "in any state court proceeding" involving the placement or custody of an Indian child who is not living within the reservation, the state court "shall transfer such a proceeding to the jurisdiction of the tribe, absent objection by either parent. . . ." *Id.* § 1911(b).

In essence, these provisions specify that there are circumstances in which the states have no jurisdiction and the tribes' jurisdiction is exclusive. Specifically, that is

---

[8] *See, generally, Indian Child Welfare Program: Hearings Before the Subcommittee on Indian Affairs of the House Committee on Interior and Insular Affairs*, 93 Cong. 15-32 (1974); *Cohen's Handbook* § 11.01, at 830-835.

the case when the Indian children involved in a child welfare proceeding reside or are domiciled within a tribe's reservation. 25 U.S.C. § 1911(a). But Indian tribes do not have exclusive jurisdiction when some other provision of existing federal law vests jurisdiction over Indian child welfare proceedings in the State. *Id.* These provisions also make clear that when a pre-existing state child welfare proceeding involving Indian children is underway, tribes can receive jurisdiction via transfer from state courts, under certain circumstances. 25 U.S.C. § 1911(b). Subsection (d) of § 1911 requires the United States, every state, and every Indian tribe to give "full faith and credit" to the judicial proceedings of any tribe applicable to Indian child custody proceedings. Together these provisions carry out ICWA's purpose "to expand and enhance *tribal* power over decision-making regarding [Indian] families." *Cohen's Handbook*, § 11.01[1], at 830 (emphasis added).

One additional provision of ICWA is relied upon by the plaintiffs to support their argument. Pursuant to 25 U.S.C. § 1918(a), "[a]ny Indian tribe which became subject to State jurisdiction [pursuant to certain federal statutes, including PL 280] may reassume jurisdiction over child custody proceedings." Section 1918(a) further provides that "[b]efore any Indian tribe may reassume jurisdiction over Indian child custody proceedings, such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction." *Id.* Section 1918(b) goes on to suggest that the jurisdiction to be reassumed could be the exclusive jurisdiction of § 1911(a), functionally terminating the power of the state authorities to also exercise jurisdiction.

### Tribal Laws

In addition to the two federal statutes explored above, this case implicates matters of tribal law. Both SMSC and Red Lake Band have tribal codes that govern their exercise of their sovereign power over child welfare and custody proceedings. Here SMSC's actions in exercising jurisdiction over C.H and C.P, and in later transferring C.P.'s case to the Red Lake Band Court are at issue, actions that were governed by SMSC's Domestic Relations Code, which was submitted to the Court as

an exhibit. Decl. of Richard Duncan ¶ 6, Ex. D, SMSC Domestic Relations Code, ECF No. 16-1.

SMSC's Code provides that the SMSC Court shall "make such orders for the commitment, custody and care of [a child in need of assistance] and take such other actions as it may deem advisable and appropriate in the interest of the child and in the interests of the Community." SMSC Domestic Relations Code, Ch. VIII, sec. 9. The Code defines "child in need of assistance" to include neglected and abused children that are tribal members, eligible for enrollment, or "any Indian child" domiciled on the Reservation or temporarily located on the reservation. *Id.* at sec. 2.d. Although it is not the business of this Court to interpret SMSC's own laws, recognizing that there exists a tribal code governing these matters is essential.

### B.    The Plaintiffs Theory

Against this backdrop, the legal flaws inherent in the plaintiffs' theory of their case become quickly apparent. As clarified by plaintiffs' counsel at the hearing, the crux of the plaintiffs' argument is that in combination, PL 280, ICWA, and 25 U.S.C. § 1918(a), deprive the SMSC Court of jurisdiction over any child welfare matters involving C.H. and C.P. Under the facts alleged in their Complaint, the plaintiffs contend that these statutes either vest exclusive jurisdiction in the State of Minnesota or require a Minnesota state court to first determine whether it is appropriate to allow the SMSC Court or the Red Lake Band Court to exercise concurrent jurisdiction.[9]

---

[9]    More specifically, the plaintiffs assert that the "existing federal law" language in § 1911(a) creating an exception to exclusive tribal jurisdiction is a reference to PL 280. Because PL 280 gives the State of Minnesota jurisdiction over civil causes of actions which arise in Indian country (except Red Lake Reservation), plaintiffs contend SMSC could not have exclusive jurisdiction under § 1911(a). Further, given that SMSC's jurisdiction was not exclusive and § 1911(b) contemplates the transfer of some state court proceeding, the plaintiffs assert that this means Scott County was required to first initiate a proceeding in Scott County District Court before the SMSC

*(footnote continued on following page)*

### C.    SMSC and the State Share Jurisdiction in this Matter

Unfortunately for the plaintiffs, there is no support for the idea that the State held exclusive jurisdiction in this matter. Nor is there support for their alternative suggestion that the state and SMSC share jurisdiction, but the law required the State to exercise its jurisdiction first. Instead, the statutes and the case law interpreting them demonstrate that SMSC acted squarely within its authority to exercise jurisdiction over C.H. and C.P. More fundamentally, even if the plaintiffs' strained reading of these statutes had merit, ICWA does not give rise to any cause of action against tribes or challenging tribal court actions. The plaintiffs' theory is based on an incorrect interpretation of the statutes at issue, and is deepened by a disregard for the inherent jurisdiction of SMSC and the Red Lake Band.

### *Doe v. Mann* and *Native Villages of Venetie*

Two Ninth Circuit Cases have explored the intersection of PL 280 and ICWA, and stand for the proposition that, although states may arguably have concurrent jurisdiction over child welfare proceedings involving Indian children, SMSC retains jurisdiction as well. The Court turns first to *Native Village of Venetie v. Alaska*, 944 F.2d 548 (9th Cir. 1991).

In *Native Villages of Venetie* the Ninth Circuit held that tribes retain concurrent jurisdiction over child welfare matters despite any provisions of PL 280. Native Americans from two villages in Alaska adopted children pursuant to tribal court rules, but the State of Alaska refused to give effect to the tribal adoption orders. 944 F.2d at 550-51. The adoptive Indian parents filed a lawsuit against the State asserting that under ICWA, Alaska was required to honor the tribal adoption decrees. In response, Alaska argued that Public Law 280 "stripped the [native] villages of whatever authority they may have had to make child-custody determinations," and that "Public

---

*(footnote continued from previous page)*
Court could ever exercise any concurrent jurisdiction vested in the Tribe. *See also* Pl.'s Resp. at 8, 27-30, ECF No. 75.

Law 280 vested the enumerated states with exclusive, not merely concurrent, jurisdiction over civil and criminal matters involving Indians." *Id.* at 559. In rejecting Alaska's argument, the Ninth Circuit observed that "Public Law 280 was designed not to supplant tribal institutions, but to supplement them," and that PL 280 is "not a divestiture statute." *Id.* at 560. Ultimately, the court held "that neither [ICWA] nor Public Law 280 prevents [the native villages] from exercising concurrent jurisdiction." *Id.* at 562.[10]

Certainly, the notion that PL 280's provision giving states jurisdiction over certain civil causes of action involving Indian parties, including child welfare proceedings governed by ICWA, finds some support in *Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005), but it does nothing to elevate that state authority over tribal jurisdiction, as the plaintiffs' here contend. *Doe v. Mann* did not involve a non-Indian parent's challenge to the exercise of tribal jurisdiction over an Indian child, so it is not aligned with the circumstances of this case. Instead, *Doe v. Mann* concerned a Native American mother's challenge to the State of California's termination of her parental rights over her Indian child. *Id.* at 1039. After a report that the plaintiff's daughter had been assaulted by a male cousin, California's social services department initiated child welfare proceedings in state court and eventually terminated the mother's rights. *Id.* at 1040. After addressing several preliminary issues, the court explained that "[t]he 'existing Federal law' proviso in [ICWA's § 1911(a)] has been interpreted to include a federal law popularly referred to as 'Public Law 280,' which gives certain states, including California, broad jurisdiction over criminal offenses committed in Indian country . . . and limited jurisdiction over civil causes of action that arise in Indian country." *Id.* at 1048. But, *Doe v. Mann* certainly did not hold that the PL 280 carve-out from ICWA's exclusive jurisdiction provision requires states to exercise exclusive jurisdiction. Indeed, the Ninth Circuit acknowledged that the states and tribes would

---

[10]    The Ninth Circuit also rejected the argument that ICWA's § 1918 divested tribes in PL 280 states of all jurisdiction in child custody cases, *Native Village of Venetie*, 944 F.2d at 561, which is precisely the same argument raised by the plaintiffs here.

have concurrent jurisdiction over Indian child welfare proceedings. *See id.* at 1067-68 (discussing "California's practice of asserting concurrent jurisdiction under Public Law 280 over dependency proceedings involving Indian children"). The court explained that the question "whether Public Law 280 states have exclusive or concurrent jurisdiction over child custody proceedings" was "resolved by [the Ninth Circuit's] decision in *Native Village of Venetie*, which held that Public Law 280 states have only concurrent jurisdiction with the tribes over child custody proceedings involving Indian children." *Id.* at 1063 n.32.

Despite the plaintiffs' strained reading of *Doe v. Mann* and *Native Villages of Venetie*, these cases persuasively reason that the provision of PL 280 codified at 28 U.S.C. § 1360(a) does nothing to eliminate a tribal court role in Indian tribal welfare proceedings. Neither case suggests that in a PL 280 state jurisdiction over child welfare proceedings lies exclusively with the state courts and must be governed by state law. Rather, *Doe v. Mann* and *Native Villages of Venetie* clearly indicate that, even in PL 280 states, tribes share jurisdiction concurrently with the states.

The plain language of ICWA's exclusive jurisdiction provision (25 U.S.C. § 1911(a)) and of PL 280's limited grant of civil jurisdiction to certain states including the State of Minnesota (28 U.S.C. § 1360(a)) likewise does not support the plaintiffs' position. ICWA establishes that tribes have exclusive jurisdiction over Indian children domiciled or residing on the reservations with an exception to such exclusivity when a state has jurisdiction over a child welfare proceeding under existing federal law. PL 280's limited grant of jurisdiction over civil matters in Indian country in certain states includes Minnesota. But nothing in the relevant provision of PL 280 says that the states' power to adjudicate those proceedings becomes exclusive of any tribal authority.

Indeed, adopting the plaintiffs' interpretation would stand the purpose of ICWA completely on its head. ICWA was passed to ensure that tribes play a robust role in child custody proceedings involving Indian children whether they live on or off the reservation because previous practice had resulted in the breakup of Indian

families by state and private agencies. *See* 25 U.S.C. § 1901(4). Congress explicitly found "that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5). "The purpose of ICWA was to rectify state agency and court actions that resulted in the removal of Indian children from their Indian communities and heritage." *Doe v. Mann*, 415 F.3d at 1047 & n.11 (citing 25 U.S.C. § 1901(5)). It simply cannot be read to limit tribal jurisdiction over Indian children.

### 25 U.S.C. § 1911(b)

The plaintiffs reference another jurisdictional provision of ICWA providing for transfer of child custody proceedings to the jurisdiction of a tribe: 25 U.S.C. § 1911(b) ("ICWA's transfer provision"). As best the Court can discern, the plaintiffs contend that absent exclusive tribal jurisdiction, ICWA's transfer provision requires a state court child welfare proceeding to be initiated prior to any tribal court proceeding involving an Indian child. The initiation of such a state court proceeding, plaintiffs argue, would thus trigger the requirement that any transfer of an Indian child-welfare proceeding be accompanied by parental consent. *See* Pls.' Opp'n. at 8-9 & 27-28, ECF No. 75. This alternative argument finds no support in § 1911(b) or in any provision cited by the plaintiffs in their Complaint, memorandum in opposition to the motions to dismiss, or at the hearing.

ICWA's transfer provision reads as follows:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(b). The plaintiffs argue that because there was no parental consent here, the State could not "transfer" the proceedings to the SMSC Court.

Plaintiffs' reliance on § 1911(b) is unavailing for two reasons. First, no "state court proceeding" regarding the welfare of the children at issue here existed at any point, making § 1911(b) inapplicable on its face. SMSC initiated child protection proceedings on January 22, 2015, proceedings which were ongoing when the Shakopee Police Department issued its own 72-hour hold on February 24, 2015. By its own terms § 1911(b) only applies to those situations in which a state court child-welfare proceeding is already underway. Moreover, ICWA's transfer provision "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation[.]" *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989). Such presumptively tribal jurisdiction cannot be read to require a state court proceeding concerning the welfare of an Indian child to precede an action in a tribal court. Here, the plaintiffs' allegations admit that no state court proceeding was ever initiated. It is thus difficult to discern what relevance, if any, ICWA's transfer provision has to this lawsuit.

Second, the plaintiffs failed to allege any facts indicating that the children were neither residing nor domiciled on the SMSC reservation at the time the SMSC Court took jurisdiction over the relevant child-welfare proceedings. In their Complaint, the plaintiffs alleged only that, *at the time the lawsuit was filed*, neither C.H. nor C.P. resided on the Red Lake reservation. Compl. ¶ 4. But the plaintiffs' allegations about the location of C.H. and C.P. in February of 2017 when the Complaint was filed is irrelevant to the location of the children on January 22, 2015, when a representative of the Community Family and Children Services Department filed an emergency ex parte petition in the SMSC Court seeking a determination that C.P. and C.H were children in need of assistance, and to transfer custody to the Community's Child Welfare Office. In fact, the record before the Court demonstrates that C.H. and C.P. were domiciled at an address on the Shakopee Reservation with Ms. Watso and C.H.'s father. Community Defs.' Ex. A at 5 ("At the time the Child Welfare Officer's

petition was filed, and for a number of months preceding the filing, C.M.H. and C.D.P. were domiciled . . . on the Shakopee Reservation.”). Thus, regardless of the precise contours of the plaintiffs' argument concerning § 1911(b), their Complaint fails to allege any facts that would make that provision relevant to this case.[11]

### No Cause of Action Against the Tribes

In addition to the above-explored problems with the plaintiffs' legal theory, their reliance on ICWA as the basis for their claims suffers from an additional fatal flaw. ICWA's section 1914, on which the plaintiffs' rely, does not create any cause of action against tribes or any basis to invalidate  Section 1914 provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. As the plain language of this provision makes clear, it does not create a cause of action for a parent of an Indian child, such as Ms. Watso, to invalidate the child-welfare proceedings of a tribal court, which the plaintiffs seek to do here.

---

[11]     In their Complaint, the plaintiffs do not discuss the fact that there was a pre-existing child welfare proceeding in the SMSC Court at the time of the hospital's February 25, 2015 report of possible child abuse and a Shakopee police officer's decision to place a 72-hour hold on C.H. During a January 28, 2015 hearing, Judge John Jacobson concluded that C.H. and C.P. were children in need of assistance pursuant to SMSC's laws. Community Defs.' Ex. F, ECF No. 21. The Complaint elides this information, and the plaintiffs make no effort whatsoever to address whether this conclusion made the children “ward[s] of a tribal court,” which would mean that SMSC “retain[ed] exclusive jurisdiction, notwithstanding the residence or domicile of the child.” 25 U.S.C. § 1911(a). This overlooked provision, if applicable, would further reinforce the validity of SMSC's exercise of jurisdiction in this case.

The reality that the statute does not authorize the type of claim the plaintiffs bring in Count I has been recognized by the Ninth Circuit:

> Section 1914 provides that the Indian child, the parent or Indian custodian, or the tribe "may petition any court of competent jurisdiction to invalidate such action." 25 U.S.C. § 1914. The action referred to is a state court action for "foster care placement or termination of parental rights." *Id.* The language of the statute could not be clearer: Congress is authorizing any court of competent jurisdiction to invalidate a state court judgment involving the Indian child.

*Doe v. Mann*, 415 F.3d at 1047. Section 1914 does not suggest that the parent of an Indian child may petition a federal court to invalidate *a tribal proceeding* for foster care placement or termination of parental rights. And such an interpretation would be inconsistent with ICWA's purpose, which was designed to ensure that *state proceedings* involving Indian children adhered to certain standards. ICWA sought to strengthen rather than undermine the authority of tribal courts in these arenas. This reality which further weakens the plaintiffs' theory.

The plaintiffs do not point to any case that construes the language of § 1914 to allow a parent to bring a lawsuit to invalidate a tribal proceeding involving foster care placement or termination of parental rights. Indeed, the plaintiffs do not address this issue at all in their response to the motions to dismiss. Nor has the Court, in its own research, located any precedent that supports the plaintiffs' implicit position that such a suit would find a basis in ICWA. Accordingly, the Court concludes that Count I of the Complaint should be dismissed because 25 U.S.C. § 1914 does not authorize a right of action by the parent of an Indian child to invalidate tribal child welfare proceedings.

### Conclusion

For all these reasons, the Court concludes that the overarching legal argument on which all of the plaintiffs' claims rely lacks merit. Neither ICWA nor Public Law 280 confer exclusive jurisdiction on the State of Minnesota under the facts

alleged in the Complaint. Instead, in a Public Law 280 state such as Minnesota, the State and tribal courts have concurrent jurisdiction over the child-welfare proceedings involving C.H. and C.P. And there is nothing about that concurrent jurisdiction that requires the initiation of a state court proceeding first, prior to any proceeding taking place in the SMSC Court or the Red Lake Band Court. Because the plaintiffs' flawed statutory argument is the centerpiece of all of its claims in Counts I and III, and for the additional reasons set forth below, the Court recommends that the Complaint be dismissed in its entirety.

## II.    Count I: Tribal Sovereignty

In the discussion above, the Court has analyzed Count I primarily as a claim against the tribal courts. Count I does not clearly assert a claim against the tribal court judges named as defendants in the Complaint—Judge Jacobson and Judge Ringhand. However, to the extent the plaintiffs claim that Judge Jacobson and Judge Ringhand violated federal law by exercising jurisdiction over the child welfare proceedings involving C.H. and C.P., such claims lack merit for the same reasons described above in Part I. In the following discussion, the Court also concludes that any claim in Count I of the Complaint against the tribal courts, Judge Jacobson, or Judge Ringhand should be dismissed for another reason as well: sovereign immunity.

### Sovereign Immunity for Tribal Courts

The SMSC Court and the Red Lake Band Court are entitled to the same sovereign immunity that bars any claims against SMSC and the Red Lake Band. Federally recognized Indian tribes, such as SMSC and the Red Lake Band possess sovereign immunity from suit. *Smith v. Babbitt*, 100 F.3d 556 (8th Cir. 1996). Such tribes are subject to suit only when Congress authorizes it or they waive their immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). "'[A] tribe's sovereign immunity may extend to tribal agencies,' including [a] Tribal Court." *Fort Yates Public School Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 670 (8th Cir. 2015) (quoting *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043

(8th Cir. 2000)). "The Supreme Court has made clear . . . that a tribe's sovereign immunity bars suits against the tribe for injunctive and declaratory relief." *Id.* (citing *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2035 (2014)).

Here, the SMSC Court and the Red Lake Band Court are unquestionably tribal agencies to which tribal sovereign immunity extends. Count I seeks declaratory relief by asking this Court to issue an Order finding that the SMSC Court and the Red Lake Band Court's child welfare proceedings have been undertaken in the absence of jurisdiction and declaring those proceedings invalid. The plaintiffs also ask the Court to issue an injunction requiring the tribal courts to dismiss their proceedings so that a new child-welfare determination can be made by the state court. But the tribal sovereignty enjoyed by SMSC and Red Lake Band bars lawsuits against the SMSC Court and the Red Lake Band Court for injunctive and declaratory relief. Moreover, the plaintiffs made no attempt to argue otherwise in their response to the tribal defendants' arguments concerning sovereign immunity and have therefore abandoned any claim that their suit could proceed against the tribal courts. *See* Pls.' Opp'n at 45-47 (discussing only the issue whether sovereign immunity extends to tribal officials). Because the case law supports the tribal courts' position and the plaintiffs have abandoned their claim against the tribal courts, Count I should be dismissed on grounds of sovereign immunity as to the SMSC Court and the Red Lake Band Court.

### Sovereign Immunity for Tribal Judges

The question of whether Judge Jacobson and Judge Ringhand are also immune from suit is somewhat less straightforward. However, because the Court has rejected the plaintiffs' argument that either judge acted beyond his or her authority, the Court also finds that sovereign immunity extends to these judges as well.

A tribe's "sovereign immunity does not necessarily protect Tribal officials from suit." *Fort Yates*, 786 F.3d at 670 n.8 (citing *Bay Mills*, 134 S. Ct. at 2035). Tribal immunity can protect tribal employees who act in their official capacities and within the scope of their authority in a suit for damages because an award of money damages

would affect the tribe itself. *See Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1471 (8th Cir. 1999) (citing *N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460 (8th Cir. 1993)). However, tribal immunity does not bar suits "for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct." *Bay Mills*, 134 S. Ct. at 2035. This means that a lawsuit may proceed against a tribal official who acts outside the scope of his authority under federal law. *Prairie Island*, 991 F.2d at 460. Such a lawsuit may only proceed if it involves a claim for prospective relief and this exception to sovereign immunity "does not permit judgments against [tribal] officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf*, 506 U.S. 139, 146 (1993).

In *Prairie Island*, 991 F.2d at 460-62, the Eighth Circuit applied these rules creating an exception to tribal sovereignty for claims seeking prospective injunctive relief against tribal officials, which essentially mirrors the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). *Prairie Island* involved a tribe's attempt to regulate the transportation of radioactive nuclear materials across reservation lands by a power company that operated a nuclear plant near the reservation. *Id.* at 459. The tribe passed an ordinance that required anyone transporting such materials on reservation land to obtain a separate license for each shipment, imposed timing requirements on the applications for those licenses, charged an application fee, and authorized the tribal council the power to determine whether to issue a license and to impose a significant fine for willful violations of the ordinance. *Id.* The power company brought suit against the tribe and the individual tribal council members, and the district court enjoined the defendants from enforcing the ordinance or interfering with the use of roads or railroads through the reservation. *Id.* at 460. On appeal, the tribe argued that "tribal sovereign immunity preclude[d] the suit and protect[ed] the tribal officers." *Id.* Because the Hazardous Materials Transportation Act, 49 U.S.C. § 1801-1819, preempted the tribe's power to enact the ordinance regulating the transportation of the nuclear material across its reservation, the Eighth Circuit rejected the tribe's argument and upheld the district court's injunction. *Id.* at 461-62. The court reasoned that tribal sovereign immunity did not apply to the tribal officers because they acted

pursuant to an ordinance that the tribe did not itself have the power to enact. *Id.* at 462. Thus, if the tribal officers tried to enforce the ordinance they would have acted outside the scope of their authority, making them subject to suit. *Id.*

In light of *Prairie Island*, the plaintiffs might be able to seek injunctive relief against the tribal court judges here if they could establish that these judges acted outside of their authority. Construing the Complaint liberally, *see* Compl., Prayer for Relief ¶¶ 2, 4, the Court will assume that the plaintiffs do, in fact, seek a prospective injunction prohibiting Judge Jacobson and Judge Ringhand from conducting any further tribal proceedings concerning the welfare of C.H. and C.P. and requiring them to dismiss existing proceedings. But the plaintiffs' argument that the tribal judges acted outside the scope of their authority is premised entirely on the legally incorrect theory discussed in Part I of this R&R. *See* Pls.' Opp'n at 45-46 ("[U]nder the ICWA and its incorporation of Public Law 280, the tribal courts do not have subject matter jurisdiction to apply tribal law and tribal preferences against non-tribal parents, instead of state law when there wasn't a prior state court ICWA proceeding without parental objection transferring the matter to tribal court."); *see also id.* at 47. Because the Court finds that neither Judge Jacobson nor Judge Ringhand acted outside the scope of their authority, the respective tribes' sovereign immunity applies to them. Stated differently, because neither ICWA nor Public Law 280 prohibited SMSC or the Red Lake Band from exercising jurisdiction over the child welfare proceedings at issue, the tribal judges cannot be said to have "placed themselves outside of the[ir] tribe[s'] sovereign immunity." *Prairie Island*, 991 F.2d at 462.

For these reasons, the Court concludes that Judge Jacobson and Judge Ringhand are entitled to tribal sovereign immunity. They are not, therefore, subject to suit for any prospective injunctive relief sought in connection with Count I of the Complaint.

### III.    Count III: Emily Piper and Scott County

Plaintiffs' § 1983 claims against Emily Piper (the Commissioner of the Minnesota Department of Human Services ("DHS")) and Scott County should also be dismissed. The plaintiffs allege that Commissioner Piper and Scott County violated the plaintiffs' constitutional and statutory rights under ICWA by adopting policies and customs that unlawfully refer child welfare proceedings to tribes. *See* Compl., Count III. The plaintiffs argue that when Scott County learned of a report of possible child abuse involving C.H., it was required by ICWA and Public Law 280 to first commence a state child welfare proceeding. But by contacting the SMSC authorities and allegedly following the instructions of the Indian Child Welfare Manual prepared by DHS, Scott County deprived the plaintiffs of their rights under ICWA and the Fourteenth Amendment to object to the exercise of tribal jurisdiction. In an Indian Child Welfare Manual ("the Manual"), the Minnesota Department of Human Services ("MNDHS") instructs counties within the State of Minnesota regarding when and how to refer matters involving the welfare of minor children who are tribal members to Indian tribal courts. Compl. ¶ 71; *id.*, Ex. 1. The Manual, plaintiffs contend, unlawfully instructs Scott County to take such actions because it is inconsistent with federal law that vests jurisdiction in these circumstances exclusively with the states, *see* Pls.' Resp. at 21-45, or first with the states.

Unfortunately for the plaintiffs, this argument fails for the same reason as the rest of the Complaint. Neither ICWA nor Public Law 280 conferred exclusive jurisdiction on the state courts, nor precluded the SMSC Court or the Red Lake Band Court from exercising jurisdiction over child welfare proceedings involving C.H. and C.P. And neither statute required Scott County to initiate a state court proceeding prior to referring the report of possible child abuse it received to SMSC, which already had child welfare proceedings underway. The Manual reflects the State of Minnesota and DHS's policy to defer to the concurrent jurisdiction of the tribal courts when a child welfare issue arises involving an Indian child. Such a policy furthers the goals of ICWA, and complies with federal law. Because the plaintiffs' § 1983 claims against

Commissioner Piper and Scott County depend on the legally incorrect position that the Manual is inconsistent with ICWA and Public Law 280, the claims asserted in Court III fail as a matter of law, and should be dismissed.[12]

Because there is no merit to the plaintiffs' claims that Scott County or Commissioner of DHS violated the plaintiffs' constitutional or statutory rights, the Court does not reach the alternative arguments raised in their motions to dismiss. However, the Court notes that the plaintiffs have disavowed that they seek any damages from the Commissioner in her official capacity. *See* Pls.' Mem. at 37 n.122. Had they done so, any such claim would have been subject to dismissal on sovereign immunity grounds pursuant to the Eleventh Amendment. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) ("[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially for the recovery of money from the state.").

## RECOMMENDATION

For the reasons above, the Court makes the following recommendations.

1.     The Tribal Court of the Shakopee Mdewkanton Sioux (Dakota) Community and Judge John E. Jacobson's Motion to Dismiss, **ECF No. 12**, should be **GRANTED**.

2.     Emily Piper's Motion to Dismiss Plaintiffs' Complaint, **ECF No. 29**, should be **GRANTED**.

3.     Defendant Isaac Hall's Motion to Dismiss, **ECF No. 36**, should be **DENIED AS MOOT** based on the plaintiffs' voluntary dismissal of their claims against him.

---

[12]     Similarly, to the extent the plaintiffs asserted a claim against Scott County in Count I of the Complaint, see Compl. ¶ 157, such a claim should be dismissed for the reasons stated in Part I of this Report and Recommendation.

4.      Defendant Scott County's Motion to Dismiss, **ECF No. 46**, should be **GRANTED**.

5.      The Tribal Court of the Red Lake Band of Chippewa Indians and Judge Mary Ringhand's Motion to Dismiss, **ECF No. 53**, should be **GRANTED**.

6.      All remaining claims in the Complaint be **DISMISSED WITH PREJUDICE**.

7.      The plaintiffs' Motion for Partial Summary Judgment, **ECF No. 103**, should be **DENIED AS MOOT**.


Date: December 5, 2017                     *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.