UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kimberly Watso, individually and on behalf of
C.H and C.P., her minor children; and Kaleen
Dietrich,

       Plaintiffs,

  v.

Emily Piper, in her official capacity as Commissioner
of the Department of Human Services; Scott
County; Judge John E. Jacobson, in his official
capacity; Tribal Court of the Red Lake Band of
Chippewa Indians; Judge Mary Ringhand, in her
official capacity; and Tribal Court of the Shakopee
Mdewakanton Sioux (Dakota) Community.

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 17-562 ADM/KMM

_____

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Aaron Winter, Assistant Attorney General, Minnesota Attorney General's Office, St. Paul, MN, on behalf of Defendant Emily Piper.

James R. Andreen, Esq., Erstad & Riemer, P.A., Minneapolis, MN, on behalf of Defendant Scott County.

Cicely R. Miltich, Esq., Faegre Baker Daniels, Chicago, IL; Greg S. Paulson, Esq., Brodeen & Paulson, P.L.L.P., Minneapolis, MN; Joshua T. Peterson, Esq., and Richard A. Duncan, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendants Judge John E. Jacobson and Tribal Court of the Shakopee Mdewakanton Sioux (Dakota) Community.

Joseph M. Plumer, Esq., Plumer Law Officer, Bemidji, MN, and Richard A. Duncan, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendants Tribal Court of the Red Lake Band of Chippewa Indians and Judge Mary Ringhand.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Plaintiffs Kimberly Watso and Kaleen Dietrich's (collectively, "Plaintiffs") Objection [Docket No. 119] to Magistrate Judge Katherine M. Menendez's December 5, 2017 Report and Recommendation [Docket No. 117]. In the R&R, Judge Menendez recommends granting Defendants Judge John E. Jacobson and Tribal Court of the Shakopee Mdewakanton Sioux (Dakota) Community's Motion to Dismiss [Docket No. 12], granting Defendant Emily Piper's Motion to Dismiss [Docket No. 29], granting Defendant Scott County's Motion to Dismiss [Docket No. 46], granting Defendants Judge Mary Ringhand and Tribal Court of the Red Lake Band of Chippewa Indians' Motion to Dismiss [Docket No. 53], and denying as moot Plaintiffs' Motion for Partial Summary Judgment [Docket No. 103].[1] For the reasons set forth below, Plaintiffs' Objection is overruled.

## II.  BACKGROUND

This lawsuit challenges child custody transfers from Scott County, Minnesota to the Shakopee Mdewakanton Sioux (Dakota) Community Court ("SMSC Court"). Plaintiffs argue that federal law requires a prior state court proceeding before a tribal court may exercise jurisdiction over child custody proceedings. Plaintiffs seek prospective declaratory, injunctive, and other relief, and also seek to invalidate tribal court proceedings and to regain parental control over the minor children.

### A. Factual Background

Kimberly Watso ("Watso") is the mother of minor children C.P. and C.H. Compl. [Docket No. 1] ¶ 1. C.P. is a member of the Red Lake Band of Chippewa Indians ("Red Lake

---

[1] Other defendants were dismissed from this case based upon the parties' stipulations. See Stipulation [Docket Nos. 71, 97]; Notice [Docket No. 98].

2

Band"). Id. ¶ 2.  C.H. is a member of the Shakopee Mdewakanton Sioux (Dakota) Community ("SMSC").  Id. ¶ 3.  Kaleen Dietrich ("Dietrich") is the maternal grandmother of C.H. and C.P. Id. ¶ 5.  Neither Watso nor Dietrich are Indians.  Id. ¶¶ 1, 5.

On January 22, 2015, a representative of the SMSC Family and Children Services Department filed a Petition in the SMSC Court seeking a determination that C.P. and C.H. were children in need of assistance, and requesting a transfer of their custody to the SMSC Child Welfare Office.  Watso v. Jacobson, et al. No. 16-983, Docket No. 1 ¶ 52 (D. Minn. May 31, 2016).  At a January 28, 2015 hearing, Watso was present to dispute the SMSC Court's jurisdiction.  Id. ¶ 54.

On February 24, 2015, C.H. was examined at a medical center.  Compl. ¶ 18.  The exam resulted in a report of possible child abuse or neglect by Watso and Isaac Hall, the biological father of C.H. and a member of SMSC.  Id. ¶¶ 15, 19.  A detective with the Shakopee Police Department issued a Notice of 72-Hour Police Health and Safety Hold, notifying the parents that C.P. and C.H. would be held at Children's Hospital in St. Paul, Minnesota.[2]

On February 25, 2015, the SMSC Court received an Emergency Ex Parte Motion to Transfer Legal and Physical Custody of the children.  Id. Ex. 4.  This motion was brought in the context of preexisting child welfare proceedings initiated on January 22, 2015.  Although filed ex parte, Watso was notified of the motion and she objected to the SMSC Court's exercise of jurisdiction.  Compl. ¶¶ 130–36.  The SMSC Court overruled Watso's objections, and transferred

---

[2] Magistrate Judge Menendez correctly noted that although the Complaint alleges that Scott County placed the administrative hold on the children, Exhibit 3 to the Complaint indicates that the hold was generated by the Shakopee Police Department.  Compare Compl. ¶ 20, with Compl. Ex. 3.

temporary legal and physical custody of C.P. and C.H. to SMSC Family and Children Services Development. In so ruling, the SMSC Court rejected Watso's argument that it lacked subject matter jurisdiction because a Minnesota state court had not first determined that jurisdiction should be transferred to a tribal court. Id. Ex. 5.

On January 17, 2017, the SMSC Court granted the Red Lake Band's motion to dismiss the tribal court proceedings regarding C.P., "allowing the Red Lake Nation to take jurisdiction over C.P." Id. ¶ 21.

Watso claims that the transfer of custody from Scott County violated the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963, her federal constitutional rights, and other provisions of federal law.

## B. Procedural History

Defendants moved to dismiss the complaint, and on April 11, 2017, this Court referred all pending motions to Judge Menendez. See Order [Docket No. 66]. Oral argument was held on May 25, 2017. See Min. Entry [Docket No. 94]. On November 22, 2017, while Defendants' dispositive motions were under advisement, Plaintiffs filed a Motion for Partial Summary Judgment [Docket No. 103].

On December 5, 2017, Judge Menendez filed a Report and Recommendation ("R&R") granting the Defendants' dispositive motions, denying Plaintiffs' Motion for Partial Summary Judgment, and dismissing the Complaint. Judge Menendez reasoned that Plaintiffs' claims for relief were premised upon a flawed legal theory. On December 18, 2017, Plaintiffs filed their Objections to the R&R.

### III.  DISCUSSION

#### A.  Standard of Review

The standard of review of a magistrate judge's order on a dispositive issue is *de novo*. See 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2.  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  D. Minn L.R. 72.2(b).

#### B.  Plaintiffs' Objection

##### 1.  Legal Standards and Matters Outside the Pleadings

Plaintiffs first argue that the R&R is erroneous because it failed to apply Rule 12 of the Federal Rules of Civil Procedure.  Contrary to Plaintiffs' contention, the R&R viewed the factual averments within the Complaint as true and concluded that the pleaded facts do not support their legal theory.  Accepting as true all facts alleged in the complaint and then determining whether those facts state a plausible claim for relief are the touchstones of Rule 12.  See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009).  Thus, the R&R appropriately applied the standards of Rule 12.

Plaintiffs next argue that the R&R erred in recommending dismissal of the case based on a flawed legal theory.  Plaintiffs contend that Rule 8 of the Federal Rules of Civil Procedure merely requires "a short and plain statement," and that an imperfect statement of the legal theory supporting their claims is not a basis to dismiss the complaint.  The R&R noted that the "precise contours of the plaintiffs' primary argument are not spelled out clearly in the Complaint or in their response to the motions to dismiss."  R&R at 6. The R&R reasoned that dismissal was appropriate because Plaintiffs' claims rely upon "a particular statutory analysis" that "is

5

incorrect." Id. Thus, the R&R recommended dismissal based on a legal theory that was incorrect rather that merely imprecise.

Plaintiffs also argue that the R&R improperly considered Judge John Jacobson's conclusion that C.H. and C.P. were children in need of assistance pursuant to SMSC's laws, a conclusion that was made in a January 28, 2015 court hearing. Plaintiffs argue that this cannot be considered at the Rule 12 stage. This argument fails for at least two reasons. First, the challenged citation is a court ruling that does not contradict the allegations in the Complaint. Such matters may be considered on a motion to dismiss. See Porous Media Corp v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that "some public records" may be considered on a motion to dismiss). Second, the citation, which is located in a footnote, is not the foundation upon which the R&R's conclusion rests. Rather, it was cited to note that another independent basis to dismiss the Complaint may exist. Since the citation was collateral to the R&R's conclusion, the motion to dismiss did not need to be converted to a motion for summary judgment. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003) (holding that it was not error for the district court to consider materials outside of the pleadings at the Rule 12 stage that were "irrelevant to its resolution of the merits of the motion").

### 2. Supremacy Clause

Plaintiffs' primary objection goes to the merits of their claims. Plaintiffs contend that Minnesota's Department of Human Services Indian Child Welfare Manual (the "Manual") conflicts with the Indian Child Welfare Act (the "ICWA") and its implementing regulations regarding jurisdiction and the procedure for transferring child custody proceedings involving Indian children to tribes. Defendants respond that the Manual and the ICWA are not in conflict

6

and that the transfer procedure that occurred here did not violate federal law.

The crux of Plaintiffs' argument is that federal law is in conflict with the Manual, which instructs social services agencies in how to address child custody proceedings involving Indian children. Resolution of this case lies at the intersection of two statutes, the ICWA and Public Law 280. Passed in 1953, Public Law 83-280 ("PL 280"), delegated jurisdiction over many civil matters that arose in "Indian country" to specified states:

> Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State[.]

28 U.S.C. § 1360(a). All Indian country in Minnesota is subject to PL 280 except the Red Lake Band. Id.

The ICWA, which was enacted prior to PL 280, provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). Plaintiffs argue that the "except where such jurisdiction is otherwise vested in the State by existing Federal law" language in the ICWA means that in PL 280 states, the state has exclusive jurisdiction over civil causes of action, including child custody determinations.[3]

The Ninth Circuit, in Native Village of Venetie I.R.A. Council v. State of Alaska, 944

---

[3] As noted in the R&R, it is unnecessary to resolve whether the custody determination here properly falls within the "civil causes of action" ambit of PL 280.

7

F.2d 548 (9th Cir. 1991), rejected Plaintiffs' argument. In that case, the Ninth Circuit ruled that PL 280 "is not a divestiture statute," but rather that it provided concurrent jurisdiction among state and tribal courts. Id. at 560–61. Critically, "neither [ICWA] nor Public Law 280 prevents [the native villages] from exercising concurrent jurisdiction." Id. at 562. The jurisdictional framework described in Native Village undermines Plaintiffs' argument that SMSC lacked jurisdiction over the custody determinations.

In an effort to rebut that conclusion, Plaintiffs cite to 25 U.S.C. § 1918(a)'s procedure for tribes to reassume jurisdiction over child custody proceedings: "Any Indian tribe . . . may reassume jurisdiction over child custody proceedings." 25 U.S.C. § 1918(a). Plaintiffs argue if PL 280 did not strip tribes of jurisdiction over custody proceedings, then the procedure for tribes to "reassume" jurisdiction described in § 1918(a) would be superfluous. Native Village persuasively rejected this same argument. Since tribes in PL 280 states retain at least concurrent jurisdiction with the state, and since concurrent jurisdiction is a narrower jurisdictional scope than exclusive jurisdiction, § 1918's procedure for tribes to reassume jurisdiction has meaning. "Thus, there is something for a tribe to reassume under section 1918 . . . even if [PL 280] is read as not divesting the tribes of concurrent jurisdiction. Native Village, 944 F.3d at 561.

Undeterred, Plaintiffs next rely on Doe v. Mann, 415 F.3d 1038 (9th Cir. 2005), to assert the proposition that Minnesota, as a PL 280 state, has exclusive original jurisdiction over Indian child welfare proceedings. That proposition finds no support in Doe. Rather, Doe continued to recognize Native Village's holding that "Public Law 280 states have only concurrent jurisdiction with the tribes over custody proceedings involving Indian children." 415 F.3d at 1063 n.32.

Plaintiffs additionally assert that under § 1911(b), jurisdictional transfers of child custody

8

proceedings involving children neither residing nor domiciled within the reservation of an Indian tribe must be initiated by the state.[4]  Thus, Plaintiffs argue, Scott County's transfer to SMSC violated federal law.  This argument is also flawed.  Section 1911(b) only applies in a "State court proceeding."  No state court proceeding existed at the time the proceedings here were transferred to SMSC.  SMSC had initiated child protection proceedings on January 22, 2015, which were pending when the Shakopee Police Department issued the 72-hour hold on February 24, 2015.  Moreover, there is no requirement that the state initiate proceedings before Scott County could transfer the case to SMSC.  The Supreme Court has held that § 1911(b) "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation."  Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36 (1989).  Thus, Holyfield contradicts Plaintiffs' argument that a state court proceeding must first be initiated.

Finally, Plaintiffs cite federal regulations stating that ICWA preempts state law, policies, or customs when they fail to exist or to meet the minimum federal standards set forth in ICWA: "where applicable State or other Federal law provides a higher standard of protection to the rights of the parent or Indian custodian than the protection accorded under the Act, ICWA requires the State or Federal court to apply the higher State or Federal standard."  25 C.F.R.

---

[4] Plaintiffs' Complaint fails to allege where C.P. and C.H. resided or were domiciled at the time Scott County transferred proceedings to SMSC, critical facts in this case.  In their Objection, Plaintiffs aver that "[n]either C.P. nor C.H. was residing nor domiciled within the reservation of a non-Public Law 280 Indian tribe at the time of the County transfer of C.P. and C.H. to SMSC."  Obj. at 9.  This averment, made without attribution, conflicts with a March 3, 2016, SMSC decision that noted C.P. and C.H. were domiciled on the Shakopee Reservation at the time the child welfare proceeding was initiated.  Duncan Decl. [Docket No. 16] Ex. A [Docket No. 17] at 5.  The record therefore reflects that C.P. and C.H. fall within § 1911(a).  Nevertheless, the Court will additionally analyze this case as though C.P. and C.H. did not reside on the Reservation at the time custody proceedings were initiated.

9

§ 23.106(b).[5] In their Objection, Plaintiffs identify multiple instances where the Manual purportedly conflicts with ICWA or its regulations. For example, Plaintiffs contend that the Manual permits agencies to refer Indian children to tribes and that under § 1911(b), only state courts can transfer proceedings to tribes. But, as discussed above, there is no conflict; § 1911(b) applies only when a state court proceeding has been initiated. None of the other instances identified by Plaintiffs present an actual conflict between the Manual and ICWA.

### 3. Sovereign Immunity and Remaining Claims

Plaintiffs also object to the R&R's conclusions that claims against Judge John E. Jacobson and Judge Mary Ringhand are barred by sovereign immunity, and that claims against Emily Piper ("Piper"), in her official capacity as Commissioner of the Department of Human Services, and Scott County should be dismissed because they are premised on the flawed legal theory discussed above.

Plaintiffs do not specifically identify how the R&R erred with respect to its analysis and

---

[5] Defendants contend that arguments concerning C.F.R. § 23.106(b) should not be considered because they are raised for the first time in this Objection. Defendants are correct that Plaintiffs did not explicitly invoke 25 C.F.R. § 23.106(b) when resisting Defendants' dispositive motions. But, Plaintiffs did cite this regulation as a basis for prevailing in their Motion for Partial Summary Judgment. Although the R&R did not specifically address the arguments Plaintiffs raised in their Motion for Partial Summary Judgment, it is reasonable to infer from Judge Menendez's ruling that those arguments were unpersuasive. Moreover, in opposing Defendants' dispositive motions, Plaintiffs asserted that the Manual is preempted by ICWA provisions for the same reasons raised here. See id. at 29 ("The [Manual] . . . authorizes administrative transfers to Public Law 280 tribes without parental consent and without a prior state court proceeding [which] is preempted by the provisions of the ICWA"); 48 ("[B]oth SMSC and Red Lake Nation lack jurisdiction because the ICWA preempts tribal court jurisdiction for Indian children off of non-Public Law 280 reservations until a state court proceeding transferring the matter to tribal court."). Therefore, Plaintiffs' preemption arguments were previously raised and the merits of Plaintiffs' Objection will be addressed.

conclusions regarding sovereign immunity and the claims against Piper and Scott County. Rather, Plaintiffs reiterate their contention that SMSC lacked jurisdiction over C.P. and C.H. As discussed above, Plaintiffs' contention is incorrect; SMSC did have jurisdiction over C.P. and C.H. Therefore, this portion of Plaintiffs' objection is also overruled.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs Kimberly Watso and Kaleen Dietrich's Objections [Docket No. 119] to the December 5, 2017 Report and Recommendation are **OVERRULED**;

2. The Report and Recommendation [Docket No. 117] is **ADOPTED**;

3. Defendants Judge John E. Jacobson and Tribal Court of the Shakopee Mdewakanton Sioux (Dakota) Community's Motion to Dismiss [Docket No. 12], is **GRANTED**;

4. Defendant Emily Piper's Motion to Dismiss [Docket No. 29] is **GRANTED**;

5. Defendant Scott County's Motion to Dismiss [Docket No. 46] is **GRANTED**;

6. Defendants Judge Mary Ringhand and Tribal Court of the Red Lake Band of Chippewa Indians' Motion to Dismiss [Docket No. 53] is **GRANTED**;

7. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 103] is **DENIED AS MOOT**; and

8. The Complaint [Docket No. 1] is **DISMISSED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 27, 2018.